IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDITH HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0655-WS-N |
| | ) | |
| STRYKER SALES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Reconsideration of Summary Judgment and Motion for Reinstatement (doc. 90).

**I.     Background.**

Plaintiff, Judith Hughes, filed suit against defendants, Stryker Sales Corporation and Howmedica Osteonics Corp., concerning a hip prosthesis that they had designed, manufactured and marketed. In particular, Hughes sought to hold defendants liable for the failure of her prosthesis on theories of products liability and negligence.

After the expert disclosure deadline had passed, defendants moved for summary judgment on the ground that Hughes' failure to proffer expert testimony that the medical device in question was defective and that the defect had caused her injuries was fatal to her ability to prevail at trial. Plaintiff's response consisted of the following arguments: (i) under Alabama law, expert testimony is not always necessary to establish a *prima facie* case of products liability; (ii) in this case, defendants had admitted the existence of a manufacturing defect by recalling the subject devices; (iii) "medical records establish that the device remained in the custody and control of [defendants] until it was delivered to Plaintiff's surgeon"; and (iv) an FDA warning letter and defendants' admissions of a defect precluded summary judgment on the negligence claim. (Doc. 82, at 5-7.)

On May 13, 2010, the undersigned entered an Order (doc. 87) granting defendant's Motion for Summary Judgment and dismissing this action with prejudice. The May 13 Order

agreed with Hughes that expert testimony is not a *per se* mandatory requirement in AEMLD cases; however, it noted that expert testimony is "usually essential and, therefore, usually required," and emphasized that a plaintiff bringing such a claim must establish that the product was defective, that the defect was traceable to defendants, and that the defect caused her injury. (Doc. 87, at 4-5.) The Court rejected Hughes' contention that the product recall was tantamount to an admission of a manufacturing defect, and pointed out specific language in the exhibits that refuted this "admission" theory. Furthermore, the May 13 Order questioned the admissibility of the recall evidence under Rule 407, Fed.R.Evid., and described the evidentiary and legal disconnect between the general recall letter and Hughes' conclusion that her specific device was unreasonably dangerous and defective. As for the medical records, the May 13 Order explained that the few pages cited by plaintiff indicated that the prosthesis had failed, but did not affirmatively show that the failure was attributable to a manufacturing defect.

The May 13 Order also relied on the dearth of causation evidence presented by plaintiff, reasoning as follows:

> "Unquestionably, an implanted hip prosthesis is a complex and technical device, the operation and mechanics of which extend well beyond the ken of lay jurors. The record evidence in plaintiff's own summary judgment submission is that the failure of such a device 'to achieve biological fixation may result from many factors unrelated to the device.' (Doc. 82, Exh. B, at 2.) Plainly, there are other possible causes of Hughes' injury, none of which she has attempted to refute. … The interaction between a complex and technical medical device and the unique physiological and medical circumstances of the patient in which it is implanted is a subject on which no ordinary juror could rationally be expected to have knowledge. The net result is that, without the benefit of expert testimony, a reasonable jury could not possibly make a determination on this summary judgment record that Hughes' injuries were caused by a manufacturing or design defect in the prosthetic hip."

(Doc. 87, at 10.) Finally, the May 13 Order looked to numerous federal decisions in which courts have required expert testimony on issues of defect and causation in cases involving medical prostheses. Based on all of these considerations, and specifically Hughes' failure to offer evidence sufficient to create genuine issues of material fact as to defect and causation, the Court granted defendants' motion for summary judgment on all claims. Plaintiff now seeks reconsideration of that ruling pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

**II. Analysis.**

*A. Legal Standard.*

Plaintiff's Motion is styled as one for reconsideration; however, it is properly examined through the lens of Rule 59(e). *See, e.g., Green v. Drug Enforcement Admin.*, --- F.3d ----, 2010 WL 1993846, *1 (11th Cir. May 19, 2010) (explaining that lower courts have almost without exception treated post-judgment motions to reconsider as Rule 59 motions, regardless of their label). "In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").[1] A motion to reconsider is not a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted).[2] The Eleventh Circuit has stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider based on new arguments). Rather, the law of this Circuit is unambiguous that "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact."

---

[1] The pragmatic policy considerations underlying these principles are that "if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, [a district] court could not efficiently or satisfactorily perform its duties." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985). Imagine how a district court's workload would proliferate if it were obliged to rule twice on the same arguments by the same party upon request. It is thus improper to utilize a motion to reconsider to ask a district court to rethink a decision once made, merely because a litigant dislikes that decision.

[2] *See also Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (citation and internal quotation marks omitted); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (same); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to allow movant "two bites at the apple").

*United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation omitted). Simply put, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) (citation omitted).

Hughes indicates that she seeks reconsideration "to ensure that justice is done" and to correct errors in the summary judgment order "without forcing the parties to engage in the machinery of appeal." (Doc. 90, at 2.) Plaintiff thus proposes a much more permissive and expansive use of Rule 59(e) than the above-described authorities, one that would authorize Rule 59(e) motions whenever the losing party disagreed with the court's decision. Such a reading would encourage inefficiency and duplication of effort, and would disregard authorities establishing that the Rule 59(e) remedy is narrow and sparingly applied. *See, e.g., Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration …, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper."). The Court cannot adopt plaintiff's views that Rule 59 motions are appropriate whenever the losing party thinks the District Court "got it wrong," and that they are properly filed in lieu of an appeal any time there is perceived error.[3]

### B. *Plaintiff's Specific Grounds for Reconsideration.*

Plaintiff's first ground for reconsideration, and one which surfaces repeatedly in her filing, is the notion that the failure of her hip prosthesis, in and of itself, constitutes sufficient

---

[3] Hughes cites two district court cases from other jurisdictions for the proposition that motions to reconsider are appropriate whenever a party thinks the original ruling was in error so as to obviate the need "to engage in the machinery of an appeal." (Doc. 90, at 2.) Neither decision supports this principle. In one of the cases, the district court, while noting its discretion to entertain a motion for relief from a previous order, indicated that its orders "are not to be viewed as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 996 (E.D. Tex. 1993). The other cited case, *Peters v. Metropolitan Life Ins. Co.*, 164 F. Supp.2d 830 (S.D. Miss. 2001), did not appear to address issues under Rules 59 or 60, or motions to reconsider.

evidence from which a jury could find a manufacturing defect. To be sure, there is record evidence (which the May 13 Order acknowledged) of a hardware failure. But the May 13 Order addressed this argument in detail, pointing out uncontroverted record evidence that failure of the device could arise from many factors unrelated to the device, and invoking well-settled Alabama law that defects must be affirmatively shown by something more than mere failure of the product. Because Hughes' contention that the failure of the device gives rise to an inference that it is defective amounts to mere rehash of arguments previously considered and rejected on summary judgment, it will not be revisited here. *See, e.g., Gipson*, 511 F. Supp.2d at 1185 ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order."); *Gougler*, 370 F. Supp.2d at 1189 n.1 ("motions to reconsider are not a platform to relitigate arguments previously considered and rejected").

Next, Hughes suggests that reconsideration is appropriate because her medical records negate the possibility of alternate causes. This is a new argument that Hughes never raised before, despite its previous availability. "A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (citation and internal quotation marks omitted). The Eleventh Circuit has made clear that Rule 59 motions "should not be used to raise arguments which could, and should, have been made before the judgment was issued," and that denial of such a motion "is especially soundly exercised when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation." *Id.* (citation omitted); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (similar). Hughes has failed to identify any reason why she did not assert during summary judgment briefing that the medical records rule out other potential causes of the device's failure, when she had a full and fair opportunity to do so; therefore, she cannot properly air that contention now under the auspices of Rule 59(e).[4]

---

[4] Even if this argument were properly raised now, it is unconvincing. Hughes does not rely on anything other than her own say-so that there was "an extremely premature failure of a total hip prosthesis withou[t] any apparent alternate cause." (Doc. 90, at 3.) Without expert testimony on these points, a lay person could not possibly be expected to conclude that the failure was "extremely premature" (how long do hip prostheses of this type generally last (Continued)

Equally deficient are plaintiff's Rule 59(e) arguments pertaining to her negligence claim. Hughes insists, as she did in her summary judgment brief, that an FDA warning letter shows that defendants were negligent during the manufacturing process. The May 13 Order deemed this evidence unhelpful because "the Warning Letter says nothing about the presence of residuals in any Trident acetabular cups, much less the specific cup in plaintiff's implant." (Doc. 87, at 10.) Fundamentally, plaintiff made no showing on summary judgment, and has made none now, to draw a nexus between the FDA warning letter and the failure of her specific device. In her Motion to Reconsider, she argues that "[t]here is no question that within months of its implantation, the Trident acetabular cup implanted in Plaintiff loosened." (Doc. 90, at 5.) Even if this is true, Hughes has presented no evidence from which a jury could reasonably find that a manufacturing defect or negligence caused that loosening. What are the possible causes of Trident acetabular cup loosening? Could a manufacturing defect or error cause it to loosen? How would one discern whether such a defect or error was the actual cause? The record answers none of these queries, and jurors could not possibly answer them without expert guidance.

In short, there are no record facts to link the problems described in the FDA letter to the loosening of a device (*i.e.*, there is no evidence that the cited manufacturing problems can cause premature loosening of acetabular cups). And plaintiff's statement that "[t]here was no infection or any other identifiable cause" of the device's failure (doc. 90, at 5) appears to be nothing more

---

anyway? What is the significance of an "extremely premature" failure from a causation standpoint?), much less that there is no "apparent alternate cause" (how is a jury to ascertain from raw medical records what the cause of the failure of this complex medical device might be?). At best, Hughes relies on a medical note stating that her device had "aseptic loosening" prior to surgery. (Doc. 84, at 65-67.) The Court has read that note several times, and finds it to be so heavily laden with medical terminology as to be virtually incomprehensible to a person untrained in medicine. That note does not appear to negate, disqualify or in any way express opinions concerning other possible causes for the device's failure. Nor does the mere inclusion of the term "aseptic loosening" (itself a medical term whose meaning and import are almost certainly inscrutable to a jury without expert illumination) constitute affirmative evidence of a manufacturing defect sufficient to enable Hughes to avoid summary judgment. Ultimately, this surgeon's note was directed not at isolating the cause or causes of the device's failure, but at documenting the revision procedure performed to relieve plaintiff's pain. It sheds no perceptible light (at least, to the untrained eye) on the question of causation. In short, review of the newly-cited pages of medical records does nothing to alter this Court's previous determinations that plaintiff failed to establish sufficient evidence of defect and causation to reach a jury.

than her own rank speculation, divorced from any record evidence.  Certainly, she procured no expert testimony to that effect.  The four pages of medical records she cites do not purport to contain any investigation, enumeration, analysis or disqualification of various possible causes of the failure of her device; rather, they simply note the physicians' observations that the device did, in fact, fail.  The only indication that there is no "other identifiable cause" for the failure of this complex medical device is plaintiff's own bare, self-serving statement.  Hughes would thus impute error to the May 13 Order for denying her the right to reach a jury on her negligence claim where she has offered nothing more than her own undocumented, unverified speculation about causation.[5]  Not only is the May 13 Order not manifestly wrong in this regard, as required for Rule 59(e) relief, but this Court is convinced that it is not erroneous at all.

### III. Conclusion.

For all of the foregoing reasons, Plaintiff's Motion for Reconsideration of Summary Judgment and Motion for Reinstatement (doc. 90) are **denied**.

DONE and ORDERED this 28th day of June, 2010.

                                          s/ WILLIAM H. STEELE
                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Hughes also states that "[n]otably, the revision surgery … resulted in a successful implantation." (Doc. 90, at 6.)  But the records she cites for this proposition say nothing about the "success" of this July 2008 procedure in the ensuing months or years.  Even if they did, the Court cannot follow plaintiff's strained logic that a successful implantation in 2008 raises a genuine issue of material fact as to whether the previous hardware failure was caused by the manufacturer's negligence or a product defect. as opposed to the myriad other potential causes of such a failure.